**UNITED STATES of America**

v.

**McINTYRE VENEER, INC., et al.**

**Civ. A. No. 68–76.**

United States District Court,
M. D. Louisiana.

June 22, 1972.

Michaelle Pitard, Asst. U. S. Atty., E. D. La., New Orleans, La., for United States.

Irving Ward-Steinman, Ward-Steinman & Karst, Alexandria, La., for defendants.

E. GORDON WEST, District Judge:

On October 27, 1964, McIntyre Veneer, Inc., represented by its President, James D. McIntyre, executed a promissory note in the principal amount of $290,000, payable in stipulated installments to the order of the Louisiana National Bank in Baton Rouge, Louisiana. This note was personally guaranteed by James D. McIntyre and Joyce McIntyre as evidenced by an Act of Guaranty executed by them individually on the same day. The note was further secured by a mortgage of even date therewith given by McIntyre Veneer, Inc. covering certain real and personal property belonging to the corporation. On November 8, 1965, McIntyre Veneer, Inc., represented by its President, James D. McIntyre, executed another promissory note in the principal amount of $66,000, which note was also payable in stipulated payments to the order of the Louisiana National Bank. This note was similarly guaranteed by James D. McIntyre and Joyce McIntyre, and was also secured by a mortgage covering real and personal property of the corporation. These loans were made pursuant to the Aid To Small Business Act, 15 U.S.C.A. § 636, in cooperation with the Louisiana National Bank. Defendants defaulted in their payments, and on June 22, 1967, both notes were transferred and assigned, without recourse, by Louisiana National Bank to the Small Business Administration, an agency of the United States Government. This suit was then filed by the United States of America against the three defendants, McIntyre Veneer, Inc., James D. McIntyre, and Joyce McIntyre, seeking judgment against the defendants, in solido, for the total amount of the unpaid balance on both notes, together with accrued interest to date of payment. The suit further asked that plaintiff's "liens, privilege and mortgage be recognized and maintained upon the real property and personalty described in said act of mortgages, and that said property be sold without benefit of appraisement according to law at public auction to the highest bidder; that out of the proceeds of said sale the United States of America be paid by preference and priority over

all other persons * * * and that the amount realized * * * be credited 'pro tanto' upon the amount of the judgment herein." No appearance was made by any of the defendants, and on September 11, 1968, after entry of default on September 9, 1968, a final judgment was entered as prayed for against all defendants, in solido. The judgment recognized the plaintiff's "lien, privilege and mortgage," and ordered the mortgaged property to be sold without appraisement as prayed for by plaintiff. Thereafter, the mortgaged property was seized and sold at public auction, without appraisement, to the highest bidder, for a gross of $130,000. In an attempt to collect the remainder of the judgment, the United States, believing that Red Oak Veneer Mill, Inc. had in its possession property belonging to the defendants, filed garnishment proceedings against Red Oak, and the Court ordered said garnishee to answer the interrogatories propounded. Both the defendants and Red Oak, the garnishee, hereinafter jointly referred to as defendants, responded, contesting the amount of the alleged unpaid balance on the judgment and further refusing to answer the interrogatories on the ground that since the sale of the mortgaged property was made without appraisement, the plaintiff is not entitled to a deficiency judgment. Garnishee therefore prays that the garnishment proceedings be vacated.

Defendants contend that no deficiency can be recovered because the sale of the mortgaged property was made without appraisal. They assert that the allowance of a deficiency judgment in this case would violate the provisions of La. R.S. 13:4106–4107, known as the Louisiana Deficiency Judgment Act, which provides, inter alia, that if a mortgagee takes advantage of a waiver of appraisement, and the proceeds of the judicial sale are insufficient to satisfy the debt, the debt nevertheless shall stand fully satisfied and the mortgagee may not obtain a deficiency judgment against the debtor.

The Government answers this contention first by urging that the right of the Government to obtain and collect a deficiency judgment is governed by Federal law and not State law, and secondly, that if State law applies, the Louisiana Deficiency Judgment Act is not applicable to cases where ordinary rather than executory process is used in securing the judgment. Since the Court concludes that the rights of the United States of America are governed by Federal law, it does not reach a determination of whether or not the Louisiana Deficiency Judgment Act applies in cases where ordinary process is used.

The Aid To Small Business Act, 15 U.S.C.A. §§ 631–647, specifically provides that the Administrator of the Small Business Administration has the power to:

" * * * pursue to final collection, by way of compromise or otherwise, all claims against third parties assigned to the Administrator in connection with loans made by him. *This shall include authority to obtain deficiency judgments or otherwise in the case of mortgages assigned to the Administrator * * *.*" (Emphasis added.) 15 U.S.C.A. § 634(b) (4).

This statute is silent as to whether State law or Federal law should apply in cases where a deficiency exists, and it is also silent as to whether or not appraisal is required or can be waived. While we find no cases directly in point, we do note a number of cases holding generally that the construction of the Aid To Small Business Act is a matter of Federal rather than State law. First National Bank, Henrietta v. Small Business Administration, 429 F.2d 280 (CA 5—1970); Royal Services, Inc. v. Maintenance, Inc., 361 F.2d 86 (CA 5—1966); United States v. Skipper Smith's Marina Inc., 283 F.Supp. 408 (S.D.Fla.—1968).

First National Bank, Henrietta v. Small Business Administration, supra, was a suit by a bank to enforce a loan guaranty agreement with the S.B.A.

The Court held that in a contract suit where the United States is a party, as a general rule, contract principles of Federal law govern. In the course of the opinion the Court said:

"The reason behind the rule, uniformity of decision, is plainly applicable to the instant case. The policy manifested in the Small Business Act is national in scope." 429 F.2d at 286.

In Royal Services, Inc. v. Maintenance, Inc., supra, plaintiff, who was the second lowest bidder on a project, sought to recover loss of profits and damages from the successful bidder because of false statements made by the latter in his certification respecting his status as a small business concern. Plaintiff sought to apply the Florida law as to third party beneficiaries. The Court held that Federal law applied; that the purpose of the Small Business Act was public in character, and that it did not intend to create civil rights of action in private persons.

While both of the above cases can be distinguished from the issue presented here as to deficiency decrees, nevertheless they are helpful in showing the tendency of the courts when looking at the Small Business Act.

More pertinent is United States v. Skipper Smith's Marina, supra. This was an action for a deficiency decree against the guarantors on a note due the S.B.A. after foreclosing on the chattel mortgage securing the note. Defendants urged that a Florida statute setting forth defenses to a deficiency judgment should be applied. This the Court refused to do, holding that Federal law controlled the granting of a deficiency decree.

Similar rulings have been made with respect to other Federal loan programs, such as F.H.A. or V.A. loans. In United States v. Wells, 403 F.2d 596 (CA 5—1968), the Government sought a deficiency judgment after foreclosure on a mortgage pursuant to a V.A. loan. The Fifth Circuit Court of Appeals held that the granting of a deficiency decree was controlled by Federal law. In that case the Court said:

"The national loan program of the Veterans Administration cannot be subjected to the vagaries of the various state laws which might otherwise control all or some phases of the loan program. This has been the uniform holding of the courts with respect to the Veterans Loan Guaranty program and we think the reasoning applies with equal force to the Vendee Loan program. * * * We have no clear statutory authority for overriding the state law, nor do we have regulations promulgated pursuant to a federal statute * * *. Nevertheless, we think this is a typical situation where under the Rules of Decision Act, 28 U.S.C. § 1652, Congress has indicated that federal law should be applied to questions of federal rights and liabilities stemming from a federal program. * * *

"We do not doubt that a deficiency judgment is a remedy afforded the United States to recover any portion of its debt which may not have been satisfied by the proceeds from a foreclosure sale." 403 F.2d at 597, 598.

The Court went on to say that while the defenses which may be asserted to a claim for deficiency judgment where the United States is the creditor have not been delineated by statute, nevertheless such defenses are only the traditional defenses such as release, disputing service or the amount due, laches, or estoppel, or such defenses as may have been fashioned by Federal case law. Nowhere has Federal case law fashioned a defense to a deficiency judgment based upon failure to have the mortgaged property appraised, and even if an appraisal were required, Federal law has never fashioned a defense based upon failure to appraise when the appraisal has been specifically waived as one of the terms of the mortgage instrument itself.

In the foreclosure of an F.H.A. mortgage, Federal law applies. In United

States v. Walker Park Realty, Inc., 383 F.2d 732 (CA 2—1967), a deficiency judgment was allowed even though the original judgment did not expressly provide for its entry.

In United States v. View Crest Garden Apartments, Inc., 268 F.2d 380 (CA 9—1959), the Government foreclosed on a mortgage which had been assigned to the F.H.A. and prayed for the appointment of a receiver. The District Court refused to appoint a receiver on the ground that no sufficient showing had been made under State law to warrant such an appointment. The Ninth Circuit Court of Appeals reversed, holding the Federal law applied.

> "[W]e do find it to be clear that the *source* of the law governing the relations between the United States and the parties to the mortgage here involved is federal. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S. Ct. 573, 87 L.Ed. 838; United States v. Allegheny County, [Pa.], 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209; United States v. Matthews, 9 Cir., 1957, 244 F.2d 626; McKnight v. United States, 9 Cir., 1958, 259 F.2d 540. Cf. Bank of America Nat. Trust & Sav. Ass'n v. Parnell, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93. It is therefore equally clear that if the law of the State of Washington is to have any application in the foreclosure proceeding it is not because it applies of its own force, but because either the Congress, the FHA, or the Federal Court adopts the local rule to further federal policy. As it is made certain in the cases just cited, this action arises under federal law, and not as an action between persons of diverse citizenship, hence the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 is inapplicable. Nevertheless state law is sometimes adopted to fulfil the federal policies involved. As the Supreme Court of the United States stated in Clearfield Trust, supra, 'in our choice of the applicable federal rule we have occasionally selected state law.' But not when

'the desirability of a uniform federal rule is plain.' 318 U.S. at page 367, 63 S.Ct. at page 575." 268 F.2d at 382.

In determining whether or not State law should be adopted to fill in a gap, the Court weighed the competing Federal interest against the local policy involved. It distinguished between the acquisition of valid security interests and the remedies which the United States can pursue.

> "After a default the sole situation presented is one of remedies. * * * Now the federal policy to protect the treasury and to promote the security of federal investment which in turn promotes the prime purpose of the Act—to facilitate the building of homes by the use of federal credit— becomes predominant. Local rules limiting the effectiveness of the remedies available to the United States for breach of a federal duty can not be adopted." 268 F.2d at 383.

This distinction was used again by the Ninth Circuit Court in a case involving the S.B.A. In Bumb v. United States, 276 F.2d 729 (CA 9—1960), the Court held that the S.B.A., as intended mortgagee of personal property in the State of California, was not exempt from the provisions of the State bulk sales law. It must be borne in mind, said the Court, that the State law "regulates only the manner of acquisition of a valid security interest, and does not purport to regulate the remedy of the mortgagee after default by the mortgagor in foreclosing the validly created security interest and liquidating the loan which the chattel mortgage was given to secure." 276 F.2d 729 at 737.

■ The motion here under submission also concerns the matter of *remedies* available to the United States in pursuance of debts due it under a federal program. It does not concern the acquisition of an enforceable security interest or marketable title. Nor does it concern an individually negotiated contract or competency to contract as were

involved in United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966), (where the Court held that the Texas law of coverture prevented the S.B.A. from proceeding against a wife's separate property). Nor is this simply a diversity case between two citizens. Therefore, this Court is constrained to follow the reasoning in the above cited cases and hold that Federal law controls the right of the United States to obtain a deficiency judgment following foreclosure on a mortgage assigned to the S.B.A.

Federal law does not require appraisal before public judicial sales. 28 U.S.C. § 2001; Pan American Petroleum Co. v. Chase National Bank, 83 F.2d 447 (CA 9—1936).

There has been no showing that the sale price obtained in the foreclosure involved here was so grossly inadequate as to shock the Court's conscience, nor has there been any showing that any of the other possible "traditional defenses" to a deficiency exist. See United States v. Wells, supra.

For these reasons, the motion to vacate the garnishment is denied, and judgment will be entered accordingly.