# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# NO. 2021 CA 0882

## NEWTEK SMALL BUSINESS FINANCE, LLC
## AS SUCCESSOR IN INTEREST BY MERGER TO
## NEWTEK SMALL BUSINESS FINANCE, INC.

## VERSUS

## ROBERT A. BAKER AND ELSA M. BAKER

Judgment Rendered: **MAY 2 4 2022**

* * * * *

Appealed from the
22nd Judicial District Court
Parish of St. Tammany, State of Louisiana
No. 2016-10884

The Honorable Alan Zaunbrecher, Judge Presiding

* * * * *

| | |
|---|---|
| Jill S. Willhoft<br>New Orleans, Louisiana | Attorney for Plaintiff/Appellant,<br>Newtek Small Business Finance, LLC |
| Andrew T. Lilly<br>New Orleans, Louisiana | Attorney for Defendants/Appellees,<br>Robert and Elsa Baker |

* * * * *

BEFORE: McDONALD, LANIER, AND WOLFE, JJ.

WILL _____

DISSENTS with REASONS

**WOLFE, J.**

Newtek Small Business Finance, LLC, as successor in interest by merger to Newtek Small Business Finance, Inc., (Newtek) appeals the trial court's March 22, 2021 judgment that granted partial summary judgment to RobertA. Baker and Elsa M. Baker and denied summary judgment to Newtek. We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2011, Baker Sales, Inc. (BSI), obtained two loans from Newtek through a Small Business Association (SBA) subsidized program. Newtek executed promissory notes in the amounts of $1,960,000.00 and $1,215,000.00, which were secured by mortgages on BSI's commercial property. Additionally, both Robert and Elsa Baker executed agreements unconditionally guaranteeing payment of all amounts owed under the notes. The Bakers' guaranty agreements were secured by conventional mortgages on their home in Lacombe, Louisiana.

In 2013, BSI filed a petition for bankruptcy relief under Chapter 7 of the U.S. Bankruptcy Code. Newtek filed a proof of claim, asserting a secured claim of $3,044,569.46 against BSI's estate, representing the outstanding balance of the loans. The Bankruptcy Court then granted Newtek's request to lift the automatic bankruptcy stay to allow Newtek to enforce its rights under state law and foreclose on BSI's commercial real estate serving as collateral to secure repayment of BSI's debt to Newtek. Newtek filed a petition for executory process in state court, naming BSI and the Bakers as defendants and requesting seizure and sale of BSI's property *without benefit of appraisal.* Newtek purchased BSI's seized property, which was appraised at $2,800,000.00 in 2011, for $81,130.00 at the 2014 sheriff's sale. Thereafter, the bankruptcy case was closed. See **In re: Baker Sales, Inc.**, 2022 WL 362908, *1 (Bankr. E.D. La. 2022) (slip opinion).

On March 7, 2016, Newtek commenced this second state court suit by filing a petition for executory process against the Bakers as guarantors of BSI's debt,

2

seeking to foreclose on the mortgages on the Bakers' home. Twice, the trial court signed orders for executory process but then revoked the writs of seizure and sale due to improper procedure.[1] On February 10, 2018, the trial court issued a judgment preliminarily enjoining the sale of the Bakers' property and converting the nature of the proceeding from executory to ordinary.[2]

The Bakers then filed a petition seeking a declaration under the Louisiana Deficiency Judgment Act (LDJA)[3] that the underlying debt was extinguished and, consequently, Newtek can no longer pursue them as guarantors of BSI's debt and the mortgages against their home are terminated. Newtek answered the petition, raising affirmative defenses and denying that the Bakers' mortgages had terminated.

The Bakers and Newtek filed cross motions for summary judgment on the issue of whether the LDJA applies to bar Newtek from pursuing the Bakers as guarantors of BSI's debt. After a hearing, the trial court denied Newtek's motion for summary judgment and partially granted the Bakers' motion for summary judgment on March 22, 2021. Pertinently, the trial court rendered judgment declaring that Newtek's rights vis-à-vis the debt are a deficiency action subject to the LDJA, which applies to extinguish the debt. The trial court further ordered Newtek to immediately cancel the inscription of the mortgages executed by the Bakers from the records of St. Tammany Parish. The trial court certified the judgment as final and appealable under La. Code Civ. P. art. 1915B(1).

---

[1] This court dismissed the Bakers' appeal from a June 1, 2016 judgment because the Bakers' complaints did not relate to the preliminary injunction but instead sought review of the trial court's reasons for judgment and its interlocutory ruling denying their request to convert the nature of the proceeding that was also contained in the judgment. **Newtek Small Business Finance, LLC v. Baker**, 2016-0919 (La. App. 1st Cir. 4/18/17), 2017 WL 1409707, *2.

[2] Newtek's appeal of the February 10, 2018 judgment was dismissed as untimely. **Newtek Small Business Finance, LLC v. Baker**, 2018-1034 (La. App. 1st Cir. 2/25/19), 2019 WL 926915, *1.

[3] The LDJA is set forth in La. R.S. 13:4106, *et seq.*

3

Newtek now appeals, contending the trial court erred in finding that the LDJA applies to its claims against the Bakers, in partially granting the Bakers' motion for summary judgment, and in denying its cross motion for summary judgment.

## SUMMARY JUDGMENT

Appellate courts review summary judgments *de novo*, using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Larson v. XYZ Insurance Company**, 2016-0745 (La. 5/3/17), 226 So.3d 412, 416. That is, after an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966A(3). A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. Any doubt is resolved in the non-moving party's favor. The court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but to determine if there is a genuine issue of material fact. **Larson**, 226 So.3d at 416.

The burden of proof is on the party filing the motion for summary judgment. See La. Code Civ. P. art. 966D(1). If the mover will not bear the burden of proof on the subject issue at trial, he is not required to negate all essential elements of the adverse party's claim, action, or defense. However, the mover must produce supporting evidence that points out the absence of factual support for one or more elements of the adverse party's claim, action, or defense. See La. Code Civ. P. art. 966A(4) and D(1). Thereafter, the burden of proof shifts to the non-moving party to produce factual support, through the use of proper documentary evidence, that

4

establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. Code Civ. P. art. 966D(1).

As an initial procedural matter, the Bakers argue that Newtek's opposition to their motion for summary judgment was untimely filed and cannot be considered. The Bakers are correct. See **Auricchio v. Harriston**, 2020-1167 (La. 12/10/21), 332 So.3d 660 (resolving a split between the courts of appeal and holding that, in the absence of consent by the parties, the trial court has no discretion to extend the deadline for filing an opposition set forth in La. Code Civ. P. art. 966B(2)). However, where there are cross motions for summary judgment raising the same issues, this court can review the interlocutory denial of a summary judgment in addressing the appeal of the grant of a cross motion for summary judgment. **Harris v. Imperial Fire and Casualty Insurance Company**, 2020-1323 (La. App. 1st Cir. 7/21/21), 328 So.3d 1208, 1214 n.3, writ denied, 2021-1282 (La. 11/17/21), 327 So.3d 994. On appeal, in addition to arguing that the Bakers are not entitled to summary judgment, Newtek argues that its own motion for summary judgment should be granted. Thus, although Newtek's opposition to the Baker's motion for summary judgment cannot be considered in this appeal, we review Newtek's motion for summary judgment that the trial court denied in addressing the trial court's judgment that granted the Baker's motion. See **Harris**, 328 So.3d at 1214 n.3; **Huggins v. Amtrust Insurance Company of Kansas, Inc.**, 2020-0516 (La. App. 1st Cir. 12/30/20), 319 So.3d 362, 367. In this posture, we turn to the parties' opposing arguments regarding the LDJA and its application to this case.

5

## DISCUSSION

The LDJA, together with La. Code Civ. P. arts. 2771 and 2772,[4] govern deficiency judgments. A deficiency judgment is a judgment rendered in favor of a creditor for the difference between the amount of a debt and the amount realized in a judicial (public) sale held for the satisfaction of that debt. **Echo, Inc. v. Power Equipment Distributors, Inc.**, 96-1771 (La. App. 1st Cir. 8/7/98), 719 So.2d 79, 92, writ denied, 98-2392 (La. 11/20/98), 729 So.2d 555. The purpose of the LDJA is to protect a debtor from an over-reaching creditor by preventing the inequity inherent in a creditor foreclosing on a debtor's property without appraisal, buying the property for a low price at judicial sale, then obtaining a personal judgment against the debtor for a greater amount than if the property had been sold pursuant to a valid appraisal. **Thomas v. Livingston Parish Sheriff's Office**, 2004-1822 (La. App. 1st Cir. 9/23/05), 923 So.2d 662, 666, writ denied, 2005-2264 (La. 3/31/06), 925 So.2d 1254. Thus, the LDJA requires an appraisal prior to judicial sale for the creditor to preserve its right to pursue the debtor for any unsatisfied portion of the debt. La. R.S. 13:4106. Due to the strong public policy it embodies, the LDJA requires strict compliance and operates as an absolute bar to a mortgage creditor who seeks to obtain a deficiency judgment where said creditor provokes a sale (judicial or private) without the benefit of appraisal. **Thomas**, 923 So.2d at 666; **Echo, Inc.**, 719 So.2d at 97.

---

[4] Louisiana Code of Civil Procedure article 2771 provides:

> Unless otherwise provided by law, the creditor may obtain a judgment against the debtor for any deficiency due on the debt after the distribution of the proceeds of the judicial sale only if the property has been sold under the executory proceeding after appraisal in accordance with the provisions of [La. Code Civ. P. art.] 2723.

Louisiana Code of Civil Procedure article 2772 provides:

> A creditor may obtain a deficiency judgment against the debtor either by converting the executory proceeding into an ordinary proceeding as provided in [La. Code Civ. P. art.] 2644, or by a separate suit. In either case, the defendant must be cited, and all of the delays and formalities required in ordinary proceedings must be observed.

Specifically, La. R.S. 13:4106 of the LDJA provides:

A. Unless otherwise provided by law, if a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, except as otherwise provided by law or as provided in the next subsection.

B. If a mortgage or pledge affects two or more properties, movable, immovable, or both, the judicial sale of any property so affected without appraisement shall not prevent the enforcement of the mortgage or pledge in rem against any other property affected thereby.

C. This Section is limited to judicial sales of mortgaged property and shall not apply to public or private sales of collateral subject to Chapter 9 of the Louisiana Commercial Laws or any similar statute.

On appeal, Newtek first argues that federal law preempts or supersedes the application of state law in this case. Newtek contends that "because BSI, the primary debtor, is in bankruptcy where its debt remains and bankruptcy law is federal, federal law not state law applies." Newtek characterizes the Bakers' reliance on the LDJA as an attempt to circumvent the bankruptcy rules and regulations and take advantage of state law.

Louisiana Revised Statute 13:4108(3) specifically provides that a sale pursuant to an order of a United States Bankruptcy Court or United States District Court sitting in bankruptcy is an exception to the LDJA and shall not prohibit the mortgagee or other creditor from obtaining a deficiency judgment against any debtor, guarantor, or surety. Here, however, the sale was not conducted pursuant to an order of the Bankruptcy Court under 11 U.S.C. §363.[5] Rather, the Bankruptcy Court granted Newtek's motion and issued an order lifting the automatic stay under

---

[5] 11 U.S.C. §363 governs the use, sale, or lease of the property of the bankruptcy estate.

7

11 U.S.C. §362(d),[6] which allowed Newtek to enforce its state law remedies. See **In re: Baker Sales, Inc.**, 2022 WL 362908 at *1. Since the sale was not conducted pursuant to an order of the Bankruptcy Court, Newtek's arguments regarding the inapplicability of the LDJA are without merit. See La. R.S. 13:4108(3); see also **Exchange National Bank of Chicago v. Spalitta**, 321 So.2d 338 (La. 1975), cert. denied, 425 U.S. 904, 96 S.Ct. 1494, 47 L.Ed.2d 756 (1976); **General Electric Credit Corp. v. Guillory & Son Mobile Home Sales, Inc.**, 822 F.2d 545 (U.S. 5th Cir. 1987). Newtek has cited no provision of the United States Bankruptcy Code or other federal law that supports its argument that federal law supersedes state law because of BSI's bankruptcy case.[7]

Newtek additionally argues that because this case involves mortgages pursuant to SBA-backed loans, foreclosure proceedings are governed by federal rather than state law. Newtek cites **United States v. McIntyre Veneer, Inc.**, 343 F.Supp. 1095, 1096-97 (M.D. La. 1972), which involved a foreclosure proceeding after default on SBA-backed loans, where the court held that the effect of a prior foreclosure sale was determined by federal rather than state law. However, the notes at issue in that case *had been assigned to the SBA*. **McIntyre Veneer, Inc.**, 343 F.Supp. at 1095. Thus, the court was presented with the question of what remedies *were available to the United States* in pursuing debts due to it under a federal

---

[6] "[T]he commencement of a bankruptcy case ordinarily imposes an automatic stay that bars creditors from pursuing debt collection activities[.]" **In re: Brown**, 807 F.3d 701, 705 (5th Cir. 2015) (citing 11 U.S.C. §362).

[7] Since this suit was filed, the Bankruptcy Court has reopened BSI's bankruptcy case and reappointed a Chapter 7 Trustee to administer "recently discovered assets." See **In re: Baker Sales, Inc.**, 2022 WL 362908 at *1. BSI and the Bakers have objected to an amended proof of claim that Newtek filed after the sheriff's sale and before the bankruptcy case was closed in 2016, in which Newtek asserted an unsecured deficiency claim of $2,963,439.46. **Id.** BSI and the Bakers contend that Newtek's unsecured deficiency claim was extinguished under the LDJA on the date of the foreclosure sale conducted without appraisal; however, neither BSI nor the Bakers objected to the amended claim when it was filed. **Id.** The Bankruptcy Court recently determined that BSI and the Bakers lack standing to object to Newtek's amended proof of claim and further declined to revisit its order allowing the amended proof of claim pursuant to the law of the case doctrine. **Id.** at *5. The Bankruptcy Court acknowledged the issues raised in the instant suit and specifically stated that it made no ruling on any claims or defenses between Newtek and the Bakers under the LDJA. **Id.** at *5 n.6.

program and concluded that *the rights of the United States of America* were governed by federal law. **Id.** at 1096, 1098. The court did not, as Newtek suggests, make a blanket conclusion that federal law supersedes state law in every case involving SBA-backed loans. Since the SBA is not pursuing any debt in this case, **McIntyre Veneer, Inc.**, is inapplicable.

After careful review, we find no merit to Newtek's arguments that federal law supersedes state law with regard to this case. The financial documents themselves, which were submitted by both parties in support of their motions for summary judgment, specify that federal law will apply when the SBA is the holder and seeks to enforce the debt. Neither the financial documents nor the jurisprudence cited by Newtek support its contention that federal rather than state law applies to determine the effect of the prior foreclosure sale in relation to Newtek's pursuit of the Bakers as guarantors of BSI's debt. Further, although BSI filed for bankruptcy, the judicial sale without appraisal was not conducted pursuant to an order of the Bankruptcy Court.

Alternatively, Newtek argues that under state law the LDJA does not apply here because it is not seeking to collect a deficiency judgment. Rather, Newtek contends this is an *in rem* action to foreclose on mortgages pledged to secure commercial loans.

In addressing a similar argument, the Louisiana Supreme Court explained:

> Whether the ... action ... is a deficiency judgment action under the strict definition of that term is of little moment. The critical issue is whether the creditor, if precluded from obtaining any further recovery against the debtor after foreclosure on the debtor's property under an executory proceeding, is likewise precluded from any further recover against the debtor's guarantor (whose obligation is an accessory obligation to that of the debtor). The ultimate issue (whether the guarantor's obligation to pay the debtor's debt up to the limits of the guaranty continues to exist after the debtor's obligation has been extinguished because of a defect in the executory proceeding) is presented, whether the action against the guarantor is characterized as a deficiency judgment action or some other type of action. The ...

contention that this is not a deficiency judgment action is not dispositive of the issue of the guarantor's obligation.

**First Acadiana Bank v. Bieber**, 582 So.2d 1293, 1295 (La. 1991).

Newtek instituted their first suit for executory process in state court to foreclose on BSI's commercial real estate, which was mortgaged as security for the loans. The amount realized at the resulting judicial sale was insufficient to satisfy the debt, leaving a deficiency. In pleadings filed in this proceeding, which the Bakers submitted in support of its motion for summary judgment, Newtek explained that it filed this suit because it realized that the foreclosure sale "would not be sufficient to satisfy the total amount due and owing on the loans." Thus, Newtek's effort to foreclose in an effort to satisfy the deficiency amount falls within the purview of the LDJA. See **First Acadiana Bank**, 582 So.2d at 1295.

Newtek also asserts that the LDJA does not apply to the Bakers as guarantors of BSI's debt. Newtek contends that the LDJA applies only to the principal debtor, which in this case is BSI.

A contract of guaranty is equivalent to a contract of suretyship. **Ory v. Russell**, 2018-1491 (La. App. 1st Cir. 11/12/19), 289 So.3d 1151, 1156. "Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." La. Civ. Code art. 3035. "A surety, or each surety when there is more than one, is liable to the creditor ... for the full performance of the obligation of the principal obligor, without benefit of division or discussion, even in the absence of an express agreement of solidarity." La. Civ. Code art. 3045. "The extinction of the principal obligation extinguishes the suretyship." La. Civ. Code art. 3059.

The law of this circuit is that the deficiency judgment proceeding is subject to all of the ordinary defenses available to a debtor, including the defense that the obligation has been modified or extinguished. **MGD Partners, LLC v. 5-Z**

**Investments, Inc.,** 2012-1521 (La. App. 1st Cir. 6/2/14), 145 So.3d 1053, 1060 (*en banc*)[8]; **Jackson v. Slidell Nissan,** 96-1017 (La. App. 1st Cir. 5/9/97), 693 So.2d 1257, 1264. Thus, in a deficiency judgment proceeding, the surety may interpose all nonpersonal defenses available to the principal debtor. **MGD Partners, LLC,** 145 So.3d at 1060; **Simmons v. Clark,** 64 So.2d 520, 523 (La. App. 1st Cir. 1953). Since extinguishment of the principal obligation is not a personal defense, it may be asserted by a surety.[9] **Simmons,** 65 So.2d at 523; see also **MGD Partners, LLC,** 145 So.3d at 1060. Newtek's argument that the LDJA is inapplicable to its claims against the Bakers is without merit.

Newtek contends that if the LDJA is available to the Bakers, it must be considered waived under the doctrine of judicial estoppel because the Bakers had the opportunity and failed to raise their objection in the commercial real estate foreclosure proceeding or the BSI bankruptcy case.

"[J]udicial estoppel [is] an equitable doctrine designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." **Webb v. Webb,** 2018-0320 (La. 12/5/18), 263 So.3d 321, 328 (quoting **Miller v. Conagra, Inc.,** 2008-0021 (La. 9/8/08), 991 So.2d 445, 452); see also **New Hampshire v. Maine,** 532 U.S. 742, 749-50, 121 S.Ct. 1808, 1814-15 149 L.Ed.2d 968 (2001). As an equitable doctrine, judicial estoppel is applied at the court's discretion. **Miller,** 991 So.2d at 452. In

---

[8] For reasons previously set forth herein, Newtek's argument that **MGD Partners, LLC,** does not apply because this is not a deficiency judgment proceeding is meritless.

[9] A 2009 scholarly article questioned the legal foundation of this court's decision in **Simmons** and offered a suggestion of a contrary rule that "should be" followed with regard to sureties and the LDJA. See Michael H. Rubin and Jamie D. Seymour, *Deficiency Judgments: A Louisiana Overview,* 69 La. L. Rev. 783, 843-50 (2009). Thereafter, this court's en banc decision in **MGD Partners, LLC,** reaffirmed the position taken by this court in **Simmons.** Despite the persuasiveness of the 2009 scholarly article, this court is bound by the law of the circuit to follow our prior decisions. See **Pontchartrain Natural Gas System v. Texas Brine Co., LLC,** 2018-0001 (La. App. 1st Cir. 6/4/18), 253 So.3d 156, writ denied, 2018-1124 (La. 9/28/18), 253 So.3d 147.

deciding whether to apply the doctrine, courts consider whether: (1) the party against whom judicial estoppel is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently. **Hawkins v. Meridian Resource and Exploration LLC,** 2016-1545 (La. App. 1st Cir. 12/6/17), 236 So.3d 610, 618, writ denied, 2018-0027 (La. 4/16/18), 240 So.3d 920.

After *de novo* review, we do not find that Newtek's summary judgment evidence establishes it would be entitled to a directed verdict if uncontroverted at trial. See **Aucoin v. Larpenter,** 2020-0792 (La. App. 1st Cir. 4/16/21), 324 So.3d 626, 632, writ denied, 2021-0688 (La. 9/27/21), 324 So.3d 87 (setting forth the burden of proof on the motion for summary judgment for the moving party who would bear the burden of proof on the issue at trial). At best, Newtek's evidence establishes the Bakers were silent or did not assert this legal position in the specific pleadings Newtek submitted. See **Hawkins,** 236 So.3d at 618 (questioning whether a party's silence could satisfy the first consideration for judicial estoppel).

More importantly, La. R.S. 13:4107 provides that "[La.] R.S. 13:4106 declares a public policy and the provisions thereof can not, and shall not be waived by a debtor." In light of this specific prohibition against waiver of the LDJA, we find that Newtek has failed to prove its entitlement to judgment as a matter of law.

Finally, Newtek contends that one or more exceptions to the LDJA apply, rendering its provisions inapplicable here. We have already determined that the bankruptcy exception claimed by Newtek does not apply here because the foreclosure sale was not a sale conducted pursuant to an order of the Bankruptcy Court. Newtek additionally argues the exceptions set forth in La. R.S. 13:4106B, applicable to security interests encumbering multiple properties, and La. R.S. 13:4108.1, applicable to commercial transactions.

When a mortgage or pledge affects two or more properties, a judicial sale of one property without appraisal does not bar enforcement of the mortgage or pledge against the other affected property. See La. R.S. 13:4106B. As the trial court explained in rejecting Newtek's argument that this exception applies, "Newtek foreclosed on the mortgage made by BSI, and that mortgage only affected one property – the business facility in Slidell. The mortgages that the Bakers made on their home do not directly secure the promissory notes BSI made in favor of Newtek – the Baker mortgages secure the guaranties which the Bakers made on behalf of BSI." For these reasons, we agree with the trial court that this exception does not apply.

Louisiana Revised Statute 13:4108.1A provides that in a commercial transaction a creditor retains deficiency judgment rights when the parties agree to assign a reasonably equivalent value to the secured property in lieu of an appraisal. See **Echo, Inc.**, 719 So.2d at 92-93. Reasonably equivalent value is defined by La. R.S. 13:4108.1B(2) as "the value that the owner and the mortgagee or other creditor of the property being sold or otherwise disposed of agree to attribute to the property for the purposes of reducing the secured debt." The statute was enacted to facilitate consensual debt reduction or "work-out" agreements and is inapplicable where the parties have not entered into a debt reduction agreement or agreed to attribute a value to the property for this purpose. **Citizens Savings & Loan Association v. Kinchen**, 622 So.2d 662, 665 (La. 1993); **Echo, Inc.**, 719 So.2d at 93.

Newtek submits that the mortgages themselves set forth a debt reduction agreement that satisfies the agreed value requirement of La. R.S. 13:4108.1A. However, the mortgages do not reflect the parties' agreement on a reasonably equivalent value of the property as that term is defined in La. R.S. 13:4108.1B(2). Consequently, Newtek has failed to carry its burden of proving that La. R.S. 13:4108.1A applies in this case.

For the foregoing reasons, we find that the trial court correctly denied Newtek's motion for summary judgment. In contrast, the Bakers supported their motion for partial summary judgment with evidence proving that the 2014 foreclosure sale on BSI's commercial real estate was conducted without appraisal. In this action against them for enforcement of their guarantees of BSI's debt, the Bakers are entitled to application of the LDJA. The trial court correctly entered partial summary judgment in the Bakers' favor, declaring that Newtek's rights vis-à-vis the debt at issue are a deficiency action and the LDJA applies to extinguish the debt, and ordering Newtek to cancel the inscription of the mortgages on the Bakers' home from the records of St. Tammany Parish. See La. Code Civ. P. art. 1878; La. R.S. 9:5557.

## CONCLUSION

The March 22, 2021 judgment of the trial court is affirmed. Costs of this appeal are assessed to Newtek Small Business Finance, LLC, as successor in interest by merger to Newtek Small Business Finance, Inc.

**AFFIRMED.**

NEWTEK SMALL BUSINESS FINANCE, LLC AS SUCCESSOR IN INTEREST BY MERGER TO NEWTEK SMALL BUSINESS FINANCE, INC.

VERSUS

ROBERT A. BAKER AND ELSA M. BAKER

**LANIER, J., dissents.**

I respectfully disagree with the majority's holding that when the BSI property was sold by judicial sale without appraisal, the debt was extinguished with respect to the Bakers, as guarantors, as well as to the principal debtor.

After Newtek foreclosed on the BSI property, an outstanding balance remained on the debt. The language of La. R.S. 13:4106 is clear that if a judicial sale is perfected without appraisal of the property, "and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor." When Newtek foreclosed on the BSI property, and it was sold at sheriff's sale without appraisal, BSI's obligation to Newtek as the principal debtor was satisfied.

However, the unconditional guarantees signed by the Bakers in their personal capacities contained the following language: "Guarantor unconditionally guarantees payment to [Newtek] of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the note when [Newtek] makes written demand upon Guarantor. [Newtek] is not required to seek payment from any other source before demanding payment from Guarantor." A contract of guarantee is equivalent to a contract of suretyship, and the terms may be used interchangeably. *Wooley v. Lucksinger*, 2006-1140 (La. App. 1 Cir. 12/30/08), 7 So.3d 660, 664. The

unconditional guarantees signed by the Bakers in their personal capacities are therefore sureties, and Louisiana suretyship law would apply to them.

Under La. R.S. 13:4108.1, which deals specifically with commercial debts, a mortgagee or creditor "may collect from or pursue any debtor, guarantor, or surety for a deficiency judgment on the secured obligation whether or not the mortgagee or other creditor has foreclosed on all or any of the property and sold such property at a judicial, public, or private sale, with or without appraisal." There are three kinds of suretyship: commercial, legal, and ordinary. La. C.C. art. 3041. One type of commercial suretyship is one in which the principal obligor or the surety is a business corporation, partnership, or other business entity. La. C.C. art. 3042(2). A limited liability company such as BSI is a kind of business entity. See Nunez v. Pinnacle Homes, L.L.C., 2015-0087 (La. 10/14/15), 180 So.3d 285, 292. The importance of the suretyship's classification is that it will determine whether the Bakers, as personal sureties for BSI's extinguished debt, are liable to Newtek for the deficiency.

Since, under La. C.C. art. 3062, a commercial suretyship is extinguished to the extent a surety is prejudiced by the action of the creditor, the Bakers would be liable for whatever remaining deficiency is owed after the sale without appraisal. In its second petition for executory process, Newtek must establish the remaining debt owed after the sale without appraisal, as well as the value of the surety collateral, which is the Baker home. Newtek would then be entitled to recover from the value of the collateral to the extent that it can satisfy the remaining debt.

The jurisprudence upon which the majority relies marks a significant divergence from the aforementioned Civil Code articles and the original legislative intent of the LDJA. That legislative intent is found in Southland Investment v. Motor Sales Co., 5 So.2d 324 (La. 1941), rendered eight years after the LDJA was passed. In Southland, the supreme court rejected an attempt to use the LDJA as a

2

bar when, after private sales did not bring sufficient sums to pay off the debt, the creditor attempted to collect the balance from the sureties. *Southland*'s holding specifically protected the debtor who owns encumbered property, granting no such protection to the surety. It should be noted that *Southland* was decided prior to Louisiana's adoption of the Uniform Commercial Code (U.C.C.) See Rubin, Seymour, *Louisiana Law Review Summer* (2009), 69 LALR 783, 840.

Jurisprudence after *Southland* regarding a surety's liability under the LDJA strayed from its holding to grant more protection to the surety. In *Simmons v. Clark*, 64 So.2d 520 (La. App. 1 Cir. 1953), which is cited by the majority, a deficiency judgment against a pledgee following a judicial sale without appraisal was barred. This court at that time relied on the Louisiana Civil Code articles on suretyship, although the case involved a pledge, which is a real right, and not a suretyship, which is a personal right. See La. C.C. art. 3035, 3141; Rubin, at 844. In *C.I.T. Corp. v. Rosenstock*, 205 So.2d 81 (La. App. 4 Cir. 1967), the fourth circuit court found that the LDJA barred a creditor's claim against an endorser based on the Civil code articles of the time, even though the judicial sale was made with appraisal. Rubin, at 845-46. In *Bowl-Opp, Inc. v. Larson*, 334 F. Supp. 222 (E.D. La. 1971), the federal court, relying on *Simmons* and *C.I.T.*, held that the LDJA could be used as a bar by endorsers following a public auction without appraisal, which was authorized by bankruptcy court order. The *Bowl-Opp* court found that when a surety is "not a party to any agreement between the maker… and the holder of the note relative to… sale of the mortgaged," the surety is protected by the LDJA. Rubin, at 846.

Recent jurisprudence has relied on these early cases to reach the principal that both the debtor and surety share the remedy provided by the LDJA. Rubin, at 846-47. However, since *Simmons*, *C.I.T. Corp.*, and *Bowl-Opp* are distinguishable from *Southland* as discussed above, they have created a divergence from the truer

3

interpretation of the LDJA as given by *Southland*, which was decided shortly after the enactment of the LDJA. It appears as though this line of cases diverged from the holding in *Southland* for the purpose of equity in their own unique sets of circumstances. See Rubin, at 847. In doing so, the jurisprudence has incorrectly equated the rights of the surety to the rights of the debtor.

In order to reconcile the divergence between *Southland* and the line of cases afterward, we should recognize that the LDJA and the Louisiana Civil Code draw a distinction between the types of sureties and commercial and consumer transactions. See La. R.S. 13:4108.1, 13:4108.2; La. C.C. art. 3041, 3049; see also Rubin, at 849. According to the Civil Code, when an impairment of subrogation occurs without the surety's prior consent, an ordinary surety is completely released while a commercial surety is released only to the extent of the impairment. La. C.C. art. 3062.

A surety, or each surety when there is more than one, is liable to the creditor for the full performance of the obligation of the principal obligor, even in the absence of an express agreement of solidarity. La. C.C. art. 3045. Comment (c) to article 3045 states that the creditor may include in the same suit both the principal obligor and the surety, or he may sue the surety without joinder of the principal obligor. After Newtek had filed its petition for executory process against BSI, the principal obligor, it was permissive for Newtek to later file the petition for executory process against the Bakers, the sureties.

When Newtek filed the second petition for executory process against the Baker home, BSI no longer owed a debt to Newtek. The BSI loans were executed with Mr. Baker's signature as president of BSI, and BSI's physical address was included under the signature. However, the Bakers were each personal guarantors of the BSI notes, as per the unconditional guarantees, which they signed in their personal capacities. Under La. R.S. 13:4106(A), the debt was only extinguished as

4

to BSI, the principal debtor. Although the unconditional guarantees state that the Bakers were jointly and severally liable, the use of the common-law phrase "jointly and severally liable" does not alter the primary undertaking of the Bakers to be bound for full performance of the loan obligation as sureties. See *Bank One v. SWC Corp.*, 36,043 (La. App. 2 Cir. 8/14/02), 823 So.2d 1060, 1062-63.

The Bakers should be liable to Newtek for the debt that was owed by BSI. As such, after the debt was extinguished as to BSI, the Bakers, as sureties, would be obligated to pay the remainder of the debt, which was not extinguished as to them.

For the above reasons, I respectfully dissent.